Morning. First case is John Johnson v. Amina Johnson. Whenever you're ready. I represent the defendant, Appellant Amanda McGrath. This is a bit of a sad case of a father v. daughter, Mr. Johnson v. Ms. McGrath, over a student loan, parent loan application. And the issue was whether Mr. Johnson had signed or authorized the signature on a federal direct plus application and master promissory note, as it's called, which was electronically filed with his daughter, Amanda, with the Department of Education for a student loan. Now, John's burden of proof was the abundance of the evidence at the trial court level. And Amanda's burden here, I submit, according to the East St. Louis School District case that I cited in the first paragraph of my brief, is to show that the trial court's decision was against the manifest weight of the evidence. And, of course, that occurs if there's an opposite conclusion that can be drawn from the facts of the case or if it's apparent from the trial court's decision that it was unreasonable or arbitrary or just not supported by the evidence. As the court will recall, John's denial of his signature on the student loan application was based upon his policy with his family, with his kids, that he would buy each of the children a car at age 16, but they were on their own in terms of the financing of their own college education expenses. And that was intended to encourage, according to him, their hard work in school either to obtain academic or scholarship or athletic scholarships or a combination thereof to help finance their college education. But I submit that the evidence at the trial court level of John's own action, at least as it related to Amanda, was inconsistent with that policy in that while Amanda began attending Pascascia College after her high school graduation in 2005 to 2007, John paid cash for the trailer she resided in. He paid for the rent for the site that the trailer sat on. He paid for the utilities at the trailer. He paid for Amanda's car insurance. And, oh, by the way, he did buy her a car. And he also paid for Amanda's food. Did he pay for her tuition? Yes. Her testimony is that he also paid for her tuition and paid for it in cash. What was his testimony? His testimony was that, no, he didn't do that. But he did admit to buying all of these other things. Oh, yes. He admitted to buying the trailer for cash. He admitted to paying all of these other expenses for her while she was attending college. Did she graduate from Kaskansky? Yes, she did. Is that clear to me? I'm sorry? And then she went on to Greenville? Yes. That's correct. Do you understand that the preponderance burden is so low? Yes, I do. But I'm suggesting to you that you really didn't get to that preponderance of the evidence when you take a step back and look at the totality of the evidence that was presented at the trial court level. But then we're stuck with abuse of discretion. I'm sorry? We're stuck with abuse of discretion. I suggest that you're stuck with manifest way of the evidence, according to the East St. Louis School District case that was cited. What's the difference between the two? You have to say the trial judge's ruling was against the manifest way of the evidence, right? Correct. And we have to say that his judgment wasn't an abuse of discretion. So it depends on your point of view. I suppose so. And the East St. Louis case sort of points that out. It says, well, the trial courts, when it comes to declaratory judgment, it has some discretion in that regard, but there's a further, deeper review that this court must apply to that when it looks at the basis for the exercise of that discretion, and they specifically reference the manifest way of the evidence. And that's why I'm arguing that, of course, at this point. So at the time that Amanda had graduated from Cascadia, she had no college debt, although she only had a $500 scholarship, she testified to, for volleyball at Cascadia. But she had no student debt, and that's because her father paid the tuition during the time she attended there. Then when we turn to the student loan application itself, John had testified that he refused Amanda's request that he sign documents related to that student loan two or three times. Each time that it was requested, according to his testimony, he was presented with a document that appeared to be just like Petitioner's Exhibit 1 that was admitted into evidence. Now, the timing and method of this is not credible, I suggest, for a couple of reasons. First, in 2006 or 2007, when Amanda was attending Cascadia College, she didn't have any need for a loan, didn't have any need to present a request for John to sign any loan. He was paying her tuition. Secondly, if you look at Petitioner's Exhibit 1, this Federal Direct Trust Application and Master Promissory Note, it's called, it required an electronic signature and filing or submission to the Department of Education. There was no need for any physical signature on a document, on a piece of paper. So there wouldn't be any reason for her to have asked him to sign an independent document. And Amanda described the place, the time, and the procedure by which this document was ultimately electronically submitted to the Department of Education. She testified that the place was in her home, the trailer that her father had purchased with cash. It was on November 20, 2007, the date that appears on the document itself, and the procedure or circumstances under which it was signed was by inputting her own personal information, social security number, address, telephone number, email address, and all of that, and John's personal information, his social security number, his address. In fact, two addresses were placed there, his physical address and also a P.O. Box address, and also his driver's license number and his social security number, two items that she wouldn't otherwise have had without his input in the whole process. And it was then submitted on her laptop in her home on that day. Now, she testified she had even offered with him discussions about this for her own mother to sign on this electronically, on this application, but he had indicated to her that he didn't want that to happen because he wanted to have the tax benefit associated with claiming her possibly as a dependent and also associated with the expenses for the loan. Now, if Amanda had really tried to secretly defraud her father with regard to this loan, she certainly went about it at the least secretive way possible. It has her information on there, her address, her social security number, her telephone number. It has his address, in fact, both addresses, as I mentioned earlier, and all the information that the department would need to make contact with him about this. And this really turns to the most incredible testimony I submit to the court that occurred at the trial court, and that was John's claim that he had no knowledge of this loan until June of 2013. He claimed at that time that he had received a letter from the department regarding the delinquency on the loan, and he testified earlier in the trial that he was working with the department regarding the loan in 2010. Now, in 2010, Amanda testified that she had just gotten married. She was living in California with her husband, who was in the Air Force. And if John was working with the Department of Education in 2010 regarding this loan, how is it that he didn't know about it until June of 2013 by his own testimony? What does that mean, he was working with them? I don't know. Well, that wasn't elicited. I mean, did you ask that question? What did that mean? Well, the testimony that was enlisted from him was he was working with the department because he hadn't known about this loan, and when he found out about this loan, he began to contact the department and wanted to have documents and information from them to find out why it was that he was potentially liable on this loan. But then in the next breath, later in the trial, he testifies that he had known anything about that loan until June of 2013 when he receives a letter at his home. So that inconsistency. So in the 2010 era, he was obtaining documents to see if he was really on the loan. That's what he claims he was doing, yes. But even then, he's not admitting that he signed the loan. Correct. But then in June of 2013 is when he says, this is the first time I ever learned of it. And then he goes on and says that that day or the next day after I learned that I was potentially liable on this loan in June of 2013, I contact my daughter on my phone and she's in Mount Vernon. There's another physical impossibility. In June of 2013, she's still married to her husband who's in the Air Force who's been stationed in England. She's with him there. And not only that, she doesn't have any phone access. The only way she communicated with relatives back here in the States was through FaceTime or Facebook messaging, she testified to. So the fact that he claims he didn't know anything until June of 2013 and then made contact with his daughter in Mount Vernon by phone is just a physical impossibility. It's just not true. Is it possible that he's just incorrect on the month? Well, on the month and the year? Three years? I mean, he said that he looked at these documents and he claimed they were the same documents that she had asked him to sign in the past, right? Yes. So he'd seen them before. Well, that's what he said. And he was pretty specific about what he was doing with his daughter once he allegedly found out in 2013. Well, his specificity about a physical document he was asked to sign makes absolutely no sense in the context and the way in which this application would be submitted, and that was electronically. And I think that is the concern I have, exactly, is that you're asking us to judge the credibility of this witness vis-à-vis your client, right? Well, no, vis-à-vis himself, his own sister. Well, I mean, there's some inconsistency, but there is some explanation for it if you look at it from the trial judge's point of view, don't you think? No, ma'am. No, you don't. No, that's why I'm here. Well, you know, it's unfortunate that you're here, don't you think? Yes, I do. I mean, I personally read this case and thought it was a tragedy that we were here. I agree. You do have a situation where you're asking us to look at the credibility of the witnesses. Yes, that is true. And what I'm pointing to is you don't even necessarily have to consider the credibility or lack thereof of my client. You just look at Mr. Johnson and his testimony. Absolutely inconsistent, absolutely impossible, I suggest, in this situation. And so when you take a step back and you consider the circumstances in their totality, I suggest to you that the manifest way to the evidence leads to the opposite conclusion of the trial court, that the manifest way to the evidence suggests that Mr. Johnson knew of this loan, that he participated in it, that he authorized his electronic signature on it, and then at some point later decides he doesn't like the fact that he's liable on this loan and does everything he can to get himself out of it. So let's suppose, that's what I was just going to ask you, let's suppose that this court reversed the finding of the trial court. What remedies are you seeking here? We're seeking the finding that, yes, in fact, he is responsible for that loan. Well, can we make that finding, or can we only say that the judge, we should vacate the judge's finding? Yes, and I think that places the parties back in their original position, and that is that he is responsible for the loan. So what is the issue really here? Is the issue that he doesn't want to pay for his daughter's college? Yes. I mean, that's the whole thing. He wants out of the liability, but why doesn't she want to pay? I don't understand that. She wants her dad to pay, but why doesn't she pay? Because... I mean, he incurred the debt. Well, the testimony was that she had incurred all of the debt that she could as it relates to Greenville College at that point. She maxed out her own loans. I understand, but why isn't she willing to pay the debt back? Why is she relying on her father to do that? Well... There's certainly no requirement in the law that that happened. Or were they divorced? Were the parents divorced? The parents were divorced, yes. But she didn't file a petition under the Dissolution Act, did she, for him to pay? Oh, no. No, he's the one who filed suit for the declaratory judgment. To get off the... Because he said the Department of Education required it. Yes, that's correct. He had to file that lawsuit to get off. So my question is, he had no obligation under the law to do it, to pay for her, and why isn't she paying her own debt? Well, he had the obligation to pay under the promissory note. He executed the note obligating himself. If he executed it. But my question is, and I can't understand this, is why isn't this young woman willing to pay her own debt? Well, I think she... She's putting all the burden on her father. No, she... It's a joint debt, isn't it? Well, I think it may... I don't know the answer to that. Is the promissory note a joint debt? I don't recall. I know that his signature appears on that. It's a parent loan. That's... As I'm talking to you, I'm recollecting this. She had maxed out all of her own student loans, and then that's where the parent loan came into the picture. But to more directly answer your question, I think, why is she wanting her father to pay the loan? She was paying her own loans. She asked him to pay the loan. He indicated he would by participating in the loan application. So she's simply asking him to do what he promised to do, and that was to pay the loan. But if he's taken off of the note, as is the course here, what happens? I don't know other than he's not responsible. He's not responsible. Do they have recourse against her? They may turn and come to her. I don't know the answer to that. And that's her fear. Wasn't the promissory note admitted into evidence? Yes, as petitioner's exhibit 1. Right. Okay. You don't know the terms of it. Well, I know that generally it was his requirement to pay the loan. She couldn't pay anymore. She couldn't apply for anymore. She had to ask him to do so. And ultimately, they're the ones, according to him, that sent him the letter in June of 2013 to say, you're delinquent on this loan. It needs to be paid. They didn't send a letter to her. They sent the letter to him. So, yes, she wants him to have to pay the loan. He doesn't want to have to. There's the crux of our case. So I suggest that the manifest way to the evidence here, when we take a step back and look at it, supports the fact that the trial court should not have entered the declaratory judgment to say he's not responsible for it. The trial court should have denied that request for the declaratory judgment and left the parties where they were. And Mr. Johnson would have had to deal with the loan. But the trial court didn't find that the father had even applied for the loan. I mean, from my reading of it, they found no credibility in the assertion that the father went to his daughter's apartment and sat down at her computer and used all of her information and then inserted some of his or her email address on it. The court found it didn't sound like Dad would have did that. Right. That's right. And so there was also, I think Justice Cates asked, what happens if this court agrees with the trial court? There was a suggestion made, I believe, by the performance council that suggested that there could be criminal charges against Joe Plante. I'm just assuming that that's some sort of forgery charge or something like that. I think the testimony was, or at least the pleadings were, that Mr. Johnson had sought potential criminal charges, but I don't know that anything came of that. I see. So I don't think there's anything out there pending at this point. Are there any other questions? The trial court's order did specifically state that the father was found to be the credible witness. Didn't it? I don't recall that, Your Honor, if it specifically made that finding. I think paragraph 13 of the judgment, considering the evidence as a whole that the court finds the plaintiff's testimony about not signing the loan application and not authorizing anyone else to sign on this behalf credible. Yes, it does say that. And I'm suggesting that's just simply against the manifest way of the evidence. And also that paragraph goes on to say, considering the content along with the demeanor, the court finds the defendant's denials and testimony incredible. So to rule the way you're asking would be for this court to be making findings of credibility, wouldn't it? Well, again, I suggest to you that the issues that you look at is the testimony and the impossibility of the facts that are alleged or testified to by Mr. Johnson. They're just a physical impossibility and several times. So whether that's an argument of credibility or not, I don't know. I just suggest it's just not possible in a manifest way that the evidence suggests an opposite conclusion to what the trial court rendered. Well, I admit it, I found some of what you're saying to be suspect as well in terms of the dates and times and things. So I'm looking forward to hearing opposing counsel's rendition and explanation of those dates. But, yes, that's the only part that I think I found that the trial court may have overlooked or had some issues with. But as far as the credibility of the two witnesses, you know, assuming that that was just an overlook by the trial court with regard to the dates and when you saw this and when you saw that, when you first started working with the Department of Education and so forth and so on, everything else, especially regarding the signing of the document electronically, the court found no credibility in your client's rendition. And that's the problematic part for us is that we have to assume that we can assess that credibility better than the trial court who was there and witnessed everything. Any further questions? I think you'll have time for a vote. Thank you.  Thank you. My name is Jaron Blasey, and I represent the affiliate that plays the court and counsel. I think the first thing that I wanted to address was whether or not the treatment was made, whether or not the Department of Education could come after Amanda for repayment of this loan. And I don't even believe that we need to get there because the very first page of the loan says that before you even get into filling it out, any person who knowingly makes a false statement or misrepresentation on this form will be subject to penalties, which may include fines, imprisonment, or both, under the U.S. criminal code. So right there, if my client did not, in fact, fill out this loan, she knows that she's subject to potentially some very severe charges or far greater than even, as your Honor said, paying back the money. She could be going to jail. Well, that assumes that somebody determines she actually filled it out. The declaratory judgment says that your client didn't fill it out, right? That would be correct. It doesn't say that she filled it out. No, it does not. Right. So I guess if they choose to come after her, they would have to. . . They're going to have to meet a very high burden. So who filled it out? And honestly, it is a tragedy we got here. And the process of my client getting here, it blew me away. You know, he did never go try to file criminal charges against his daughter. What he did was go try to make a police report about fraudulent charges being made against his credit, and that didn't work. So then he goes to the Department of Education, and they. . . So is this about a credit score? Is that what this is about? No, it's about when he initially learned of this, it's because his tax refund got seized. $14,000 got seized. It was after his wife had just passed away, and he had no idea why. So he gets to digging. And when did his tax refund, which tax refund got seized? 14 and 15. 2014 and 2015? Yes. They now have been refunded, but they both got seized, but. . . So they've been refunded because of this order? Yes. So a total of 14. . . How much was the total amount due at the time of the seizure with interest and penalty? Over $30,000. And that was just. . . Who knows what it would be at this point, because the interest is astronomical. But, you know, as my client started digging, he then goes to the Department of Education and starts the agency process, and they basically just say, You have to file a lawsuit. So that's what he did. And, you know, we've all read the facts, so that's why I guess we throw questions at you. But I'm interested in what Justice Barberos said, and that is. . . And kind of me too. What about this June 2010 issue? I now understand the seizure and the 2013. What about the June 2010 issue? Did that ever happen? No. I'm at a loss of what Mr. Martin is referring to. There was never any testimony that he was dealing with in 2010 in reading the transcript. And it just. . . It seems like there was no testimony to that, and I would like to address it. But it just didn't happen. I didn't have it in my notes either, but I had some reference to it. And so I guess I'll have to review the transcript again. But you're telling me that the transcript is not going to contain the 2010, except for maybe his questioning. Correct. And other than me refreshing my recollection, because when I read that, did that happen? And it simply didn't. Okay, so the thing that really prompted it was the seizure of his tax returns. Right, and then he just started digging. And my client did not want to go this route. It simply. . . And as he testified in trial, he couldn't afford it. I mean, of course. But if they seized his 2014, he doesn't file his 2014s until 2015. Right? So isn't that how it works? In 2015, April, you file your 2014 taxes. So if his 2014 taxes were his first notice, then how do we get back to June 2013? Now we're really. . . I'm really confused. And honestly? If that's his testimony, that this all happened because of seizure in 2014, you don't get your tax return unless he's unusual. And I don't even know how he could be filing his 2014 taxes in 2014. That just doesn't happen. Well, his very first notice, okay, was he got a letter from the Department of Education. And so he's just digging, digging and trying to figure out what it is. Okay, so that's the first notice. Yes, that was June 2013. And then he's digging and he's trying to figure it out. And then in the meantime, all of this happened. This was years before we ever got to the trial court of him trying to fix it. Okay, now that's what I had in my notes is the letter. And I think that's what Mr. Martin said. Right. So when you came up and said this happened because of the seizure, I would be so confused. Sorry, I meant more why he had to take this route. Because your Honor said it was a tragedy, and I just. . . This is a tragedy. It is, and this was not a last resort. And probably, unfortunately, something that can never be mended at this point, you know, over money. It's a shame, but as my client said, he couldn't afford it. Of course every parent wants to pay, he just couldn't afford it. And I think that gets me to what this court can do here. I filed a motion to dismiss. When the trial court. . . Is up here in this court? I filed, yes, I filed a motion. Is that a motion pending? I did file it, and then the court asked me to file a brief, so I filed a brief also. Okay. But it had not been ruled on. The court said it would take it up all at oral argument. Okay, I didn't see that. Thank you. No, that's okay. So in my argument, my motion to dismiss is that there's no longer a case in controversy in that once the trial court rules, that was obviously sent by my client to the Department of Education when the motion for stay wasn't granted. And he received a letter from the Department of Education. He's no longer in the system. They have no record of him. So even if the trial court were to be, I guess, reversed, it doesn't get it back in the system. There's no longer any controversy between him and Amanda. What's the basis for your motion to dismiss? That there's no actual controversy at this point based upon the Department of Education clearing them from the system. Well, they did that at their own risk, though, didn't they? Yes. I mean, we're not bound by something that a third party does. Absolutely. How is this court losing jurisdiction just because the Department of Education not takes action? Just that, okay, if the trial court were to be reversed, there's no controversy any longer because all my client wanted was him no longer to be liable on the loan. Well, the Department of Education has found he's no longer liable on the loan. So even if the trial court's reversed, it doesn't necessarily make him liable to the Department of Education again. So it's kind of a moot issue is what I'd argue because certainly you're not bound by it, but it doesn't necessarily make the Department of Education re-find him liable for the loan. Did you submit anything with your motion? I apologize. No, that's okay. I did submit a motion, and I see it on the docket sheet, but did you file an affidavit of any kind from attaching the Department of Education's? I did. I attached their letter to where they don't even have a name. Not a letter. Is there an affidavit saying that he's no longer liable on the loan? Just the letter from the Department of Education. How do we take judicial notice of a letter? Because? What's the basis for that? Sorry? This is an interesting argument. So how do we take judicial notice of the actions of a public agency? I would submit my motion to dismiss brings the case that a reviewing court can, of course, take judicial notice of such events or facts which, while not appearing in the record, disclose that an actual controversy no longer exists between the adverse parties. Okay, but how do we, what are the rules of evidence that would allow us, or the rules of appellate procedure? I think it would take judicial notice. Because a letter is attached? Is that what you're asking? That is what I'm saying. Honestly, I tried to get more. I had my client try to contact the Department of Education, but when he's no longer in the system, I can't even get something from someone saying anything, as their social security number is no longer even associated with the loan. So the problem I'm having is if the letter says he's no longer liable for the loan? The letter says he's no longer, his social security is no longer even associated with any loan. Okay, but the issue before the trial court was whether or not he signed a document. Correct. And not the consequences of the signing of the document. That is correct. The reading was different than the end result you wanted. The result I wanted was a declaratory judgment saying he was not liable because that is what the Department of Education wanted. Yeah, but in order to get to point B, you needed point A, which was that's not my signature. Correct. That's what you needed from the trial court. That is what I needed. Once you got that order. Correct. You sent that to the Department of Education. Only after the motion for stay was denied. Sure. Yes. And then they took action to the benefit of your client. Correct. So my question is, the controversy before the court, trial court was, was that his signature? Correct. It was not, does he own the loan? Correct. That is correct. In fact, it's not even before the trial court, as I was suggesting earlier, that it's her signature. That is correct. Right? That is correct. So why isn't there a controversy? Because it's ultimately moot? Ultimately moot. It's an interesting argument. I assume the court wasn't that convinced by it or it would have been. No, we take a lot of motions with the case. Do you have a case that supports your theory? That you cited? Not directly on point other than just tying the facts together that it is moot. There was not any case I could find that directly was on point. Or similar. There wasn't. To your knowledge, as of today, no one has come after Amanda for repayment of the loan? To my knowledge, no. The Department of Education didn't give any indication that they were pursuing anything that your client wouldn't be aware of? No. As a matter of fact, when my client contacts them, they won't speak to him. They don't know who he is. So I doubt he could even glean any of that information. And that's not what he wants. He just wanted to not be liable. If the court does not find my motion to dismiss convincing, and we do get to the issue of what Mr. Martin put in his brief, first I, and I think Your Honor did a very good job of saying it depends what perspective you're looking at, but I don't think we can ignore that we do have an abuse of discretion. So basically this court would have to find absolutely no reason that the person could have possibly found what the trial court found, and we have to take the trial court's credibility into account. And that's just such a high burden. And the different issues that Mr. Martin raised, I would suggest it just doesn't get him there. And what was also left out, as we had the testimony of both parties here, but we also had two unbiased witnesses who testified, and I guess you could argue whether or not they were biased, but they weren't parties, that twice said they were present when Amanda came to John and said, sign this loan. And he said no, once he wrote it up. So when Mr. Martin argues that it's nonsensical for my client to argue that a signature would even be needed on the loan because it was done electronically, I argue to the court that she did it electronically because she wasn't getting anywhere, but she twice tried physically to get it signed. I mean, that would certainly be the way to get around getting a signature. You file it electronically. I mean, how often are taxes filed electronically when, you know, one spouse necessarily doesn't have the other one there? Not only positively, but certainly an easy way to get around actually having someone physically sign. And honestly, when Amanda and I submit that my client did not sign this loan and never did, never had any intention, I don't think that Amanda probably thought we would end up here. When this loan, and I argue was done without my client's knowledge, probably thought it would get smoothed over, they would figure it out. I don't think anybody ever thought we'd get to where we were and my client actually demanding that she repay it or he not be liable. I would submit that an 18, 19-year-old's thought process at that point is we'll figure it out later. But regardless. Well, she clearly could have had that perspective in light of his payment to the prior college, right? Absolutely. I mean, that's pretty uncontested that he made all those payments, cask, cask. It is. Actually, it is contested. There was not one scintilla of evidence presented that my client paid one penny at cask, cask yet. No, no, no. I'm talking about the other monies that were paid. That's correct. The rent, the car. That's correct. And as to Mr. Martin's statement that Amanda had maxed out her loans before she went to my client, there was no evidence presented that she had any loans either. I mean, that was just other than her testimony. But this loan, the loan had as references my client's ex-wife that he was going through a child support lawsuit at the time as a reference and Amanda's boyfriend that everybody admits my client didn't know for three years. And again, I mean, that supports credibility, but I would argue that that's ludicrous to even argue that my client would ever do that. My client's construction by trade. He fills out a lot of loan applications, and he testified he always uses his bankers, his other people he does business with as references, not his daughter's boyfriend and his ex-wife. Mr. Martin argued that there was no proof that Amanda was – could have called her because she was in London and she didn't have a phone. Again, that was her testimony that the court again found as incredible. And I'm addressing these several issues because the only argument that I saw Mr. Martin make is this should be reversed because of these different factual scenarios. There was not a single case which was presented which cited any law why it should be reversed, nothing other than the facts were convincing. And I would just submit that when we're getting to Mr. Martin's only argument being the facts don't support the trial court doing what it did, we're getting into credibility. We're getting into something that this court has to defer to the trial court. So based on that, I would argue that the trial court did not abuse its discretion. The trial court had more than enough evidence to do what they did. I would ask for this court to defer to the trial court, defer to their credibility, defer to their factual determinations, and affirm the finding of Judge Stedland. Thank you. Thank you.  To first address the issue of the June 2013 and the 2010 issue, I would cite the court to page three of my brief where I cited in the transcript the statement of facts to the page 97 and page 104 where Mr. Johnson had testified that he knew nothing of the loan until June 2013 when he received the letter from the Department of Education that the loan was delinquent. That's transcript 97 and 104. Page three of the brief. And where was the June 10 cite? The 2010, there isn't any particular month that I could garner from the transcript, but if you look at page 11 of my brief, the transcript reference is 102 and 139. That's where he was testifying that in 2010 he was dealing with the department over the loan. You don't think that could have been just a miscue? I mean, it wasn't stated over and over and over. Oh, it was. It was stated on more than one occasion. Okay. And there was some pressing about that particular issue because that was one of the things that I was challenging at the trial court level was the timing on this and the credibility associated with that. There was also a question asked about, well, if Mr. Johnson is not responsible for this loan as it relates to the Department of Education, is there any liability associated with my client? And I just wanted to answer that, yes, my client has informed me. Of course, that's nothing of the record, but I just wanted to inform the court. They have come to her to say, you're now responsible for this loan. Well, that's not for us to consider here. No, I just wanted to address that issue. But the issue, though, correct me if I'm wrong, the trial court did not decide that your client actually signed this document. No, but obviously the implication is that she did. Well, of course, or somebody did. Not that somebody did, but that somebody is her. Well, perhaps you'll represent her in that proceeding. Again, obviously we're talking about factual issues here. And that does, of course, involve the credibility, but it also involves the manifest weight of the evidence. And when you consider the totality of the circumstances, the totality of the evidence, its manifest weight suggests that this is a matter that he knew about, that he participated in and authorized its submission for the loan. What do you think about this no case or controversy argument? Well, again, that's part of what I wanted to address with the court when I was telling the court, yes, in fact, the Department has approached my client. Okay, but that's just a her argument. Well, that's the controversy, though. Who's responsible for this loan? No, that is not the controversy. You're bound by the pleadings that were before the trial court. Pleadings before the trial court were a declaratory judgment filed by the father, right? Right. And it was, I didn't sign them. So you have that issue that was decided by the trial court. Then you have an ancillary issue, something that happens because of the trial court's order. Does that eliminate our jurisdiction? No, not at all, I suggest, because the natural consequences of the trial court's decision is that he's not responsible for the loan, but my client is. And therein lies the controversy. I'm not sure you're understanding. Is there anything in the declaratory judgment that says that the court should have considered that he was not responsible such that the Department of Education now can rely on that? That's the first question. Well, yes. I mean, that's the whole purpose for the suit. The purpose of the suit was he didn't sign it. Well, the purpose of the suit was because the department said, if you want out of this loan, Buster, you're going to have to get a court order that says you didn't execute this document and you're therefore not liable for it. So then when he gets it, he submits it to the department and the department says, okay, you're no longer liable for it. They then turn their sights on my client. And that is the natural consequence of the court's decision. But doesn't the Department of Justice take action at its own peril pending this appeal? The Department of Education? I'm sorry. Yes. I've referenced corrections. Yeah. I'm sorry. The Department of Education. Don't they really take action at their own peril? I think so. I think so because this trial court's decision is subject to reversal and is subject to placing the parties right back where they were before the suit was ever filed. Okay. Thank you. Thank you. Thank you. Thank you. We'll take this matter under advisement and issue a ruling in due course.